**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

KEITH ELLIS,                    )
DESMOND SINGH,                  )
RONALD T. CLIFFORD,             )       C.A. No. 06-305 Erie
MARVIN A. HOLLAND,              )
ANTWON ROGERS,                  )       **District Judge McLaughlin**
SIDDIQ ABDUL HAMID              )
                Plaintiffs,     )       **Chief Magistrate Judge Baxter**
                                )
        v.                      )
                                )
UNITED STATES OF AMERICA, et al., )
                Defendants.     )


**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

## I.    RECOMMENDATION

It is respectfully recommended that Defendants' motion to dismiss or in the alternative

for summary judgment [Document # 124] be granted.

It is further recommended that to the extent that Plaintiffs have attempted to bring either

a procedural or substantive due process claim, it should be dismissed for failure to state a claim

pursuant to the authority granted to this Court under the Prison Litigation Reform Act.

The Clerk of Courts should be directed to close this case.


## II.    REPORT

### A.    Relevant Procedural History

On December 22, 2006, Plaintiffs Keith Ellis, Marvin Holland, Antwon Rogers, Siddiq

Hamid, Ronald Clifford, Desmond Singh, and Markese Clark[1], all federal inmates at that time

---

[1] Plaintiff Markese Clark has since moved to sever his claim from this action and has
initiated a new civil action at Number 08-95Erie.

1

incarcerated at the Federal Correctional Institution at McKean ("FCI-McKean"), filed this *pro se* action. Plaintiffs are Sunni Muslim inmates who allege statutory, constitutional and tort claims related to the alleged denial of Halal lamb for the religious and ceremonial meal in celebration of Eid in January 2005. Named as Defendants are: the United States of America; James Sherman, former Warden of FCI McKean; Gary Grimm, former Assistant Warden of FCI McKean; Jan Olowin, Supervisory Chaplin of FCI McKean; Brian Grimm, Chaplain of FCI McKean; Scott Dodrill, Northeast Regional Director of the Bureau of Prisons; Henry Sadowski, Northeast Regional Counsel of the Bureau of Prisons; and Gerald Desio, Food Service Supervisor of FCI-McKean.[2]

In their First Amended Complaint, the six Plaintiffs assert statutory claims under the Federal Tort Claims Act, the Religious Land Use and Institutionalized Persons Act, and the Religious Freedom Restoration Act, as well as *Bivens* claims under the First and Fifth Amendments. Document # 99. Defendants have filed a motion to dismiss or in the alternative for summary judgment. Despite being given numerous opportunities to do so, Plaintiffs have not filed an opposition to the pending dispositive motion, but have instead filed a motion to file a second amended complaint. See Document # 126, Briefing Order; Document # 144, Motion to Amend Complaint. Defendants have filed an opposition addressing the motion to amend. Document # 143.

The issues have been fully briefed and are ripe for disposition by this Court.


B.      **Standards of Review**

1.      *Pro se* **pleadings**

*Pro se* pleadings, "however inartfully pleaded," must be held to "less stringent standards than formal pleadings drafted by lawyers." Haines v. Kerner, 404 U.S. 519, 520-521(1972). If

---

[2] In their proposed second amended complaint, Plaintiffs seek to add Edward Roberts, Northeast Regional Religious Service Administrator, as a Defendant to this action. Document # 141.

the court can reasonably read pleadings to state a valid claim on which the litigant could prevail, it should do so despite failure to cite proper legal authority, confusion of legal theories, poor syntax and sentence construction, or litigant's unfamiliarity with pleading requirements. Boag v. MacDougall, 454 U.S. 364 (1982); United States ex rel. Montgomery v. Bierley, 141 F.2d 552, 555 (3d Cir. 1969)(petition prepared by a prisoner may be inartfully drawn and should be read "with a measure of tolerance"); Smith v. U.S. District Court, 956 F.2d 295 (D.C.Cir. 1992); Freeman v. Department of Corrections, 949 F.2d 360 (10th Cir. 1991). Under our liberal pleading rules, during the initial stages of litigation, a district court should construe all allegations in a complaint in favor of the complainant. Gibbs v. Roman, 116 F.3d 83 (3d Cir. 1997). See, e.g., Nami v. Fauver, 82 F.3d 63, 65 (3d Cir. 1996)(discussing Fed.R.Civ.P. 12(b)(6) standard); Markowitz v. Northeast Land Company, 906 F.2d 100, 103 (3d Cir. 1990)(same). Because Plaintiff is a *pro se* litigant, this Court will consider facts and make inferences where it is appropriate.

### 2. Motion to dismiss pursuant to Rule 12(b)(1)

When a motion to dismiss is made under Federal Rule of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction which attacks the complaint as deficient on its face, the Court must take all allegations in the complaint as true. Mortensen v. First Federal Sav. and Loan Ass'n, 549 F.2d 884, 891(3d Cir. 1977). However, when the motion attacks the existence of subject matter jurisdiction in fact, no presumptive truthfulness attaches to plaintiff's allegations and the Court may weigh the evidence to satisfy itself that subject matter jurisdiction exists in fact. Id. at 891. See also Carpet Group Intern. v. Oriental Rug Importers Ass'n, Inc., 227 F.3d 62, 69 (3rd Cir. 2000); Poling v. K. Hovnanian Enterprises, 99 F.Supp.2d 502, 515 (D.N.J. 2000). Accordingly, no presumptive truthfulness attaches to allegations regarding subject matter jurisdiction.

**3.     Motion to dismiss pursuant to Rule 12(b)(6)**

Rule 8(a) of the Federal Rules of Civil Procedure states that a pleading must set forth a claim for relief which contains a short and plain statement of the claim showing that the pleader is entitled to relief. A motion to dismiss filed pursuant to Federal Rule of Civil Procedure 12(b)(6) must be viewed in the light most favorable to the plaintiff and all the well-pleaded allegations of the complaint must be accepted as true. Neitzke v. Williams, 490 U.S. 319 (1989); Estelle v. Gamble, 429 U.S. 97 (1976). The issue is not whether the plaintiff will prevail at the end but only whether he should be entitled to offer evidence to support his claim. Neitzke; Scheuer v. Rhodes, 419 U.S. 232 (1974). As the United States Supreme Court recently held in Bell Atlantic Corp. v. Twombly, ___ U.S. ___, 127 S. Ct. 1955 (May 21, 2007), a complaint must be dismissed pursuant to Rule 12 (b)(6) if it does not allege "enough facts to state a claim to relief that is plausible on its face." Id. at ___, 1974 (rejecting the traditional 12 (b)(6) standard set forth in Conley v. Gibson, 355 U.S. 41 (1957)). The court must accept as true all allegations of the complaint and all reasonable factual inferences must be viewed in the light most favorable to plaintiff. Angelastro v. Prudential-Bache Securities, Inc., 764 F.2d 939, 944 (3d Cir. 1985). The Court, however, need not accept inferences drawn by plaintiff if they are unsupported by the facts as set forth in the complaint. See California Pub. Employee Ret. Sys. v. The Chubb Corp., 394 F.3d 126, 143 (3d Cir. 2004) citing Morse v. Lower Merion School Dist., 132 F.3d 902, 906 (3d Cir. 1997). Nor must the court accept legal conclusions set forth as factual allegations. Twombly, ___ U.S. ___, 127 S. Ct. at 1965 citing Papasan v. Allain, 478 U.S. 265, 286 (1986). "Factual allegations must be enough to raise a right to relief above the speculative level." Twombly, ___ U.S. ___, 127 S.Ct. at 1965. Although the United States Supreme Court does "not require heightened fact pleading of specifics, [the Court does require] enough facts to state a claim to relief that is plausible on its face." Id. at ___, 1974.

**_____4.     Dismissal pursuant to the PLRA**

4

The Prison Litigation Reform Act provides that:

> (a) Screening - The court shall review, before docketing, if feasible or, in any event, as soon as practicable after docketing, a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity.

> (b) Grounds for dismissal– On review, the court shall identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint– (1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or (2) seeks monetary relief from a defendant who is immune from such relief.

28 U.S.C.A. § 1915A.  Under Section 1915A, not only is a court permitted to *sua sponte* dismiss a complaint which fails to state a claim, but is required to do so.  Nieves v. Dragovich, 1997 WL 698490, at *8 (E.D. Pa. 1997)("Under provisions of the Prison Litigation Reform Act codified at 28 U.S.C. §§ 1915A, 1915(e) and 42 U.S.C. § 1997e(c), the district courts are required, either on the motion of a party or *sua sponte*, to dismiss any claims made by an inmate that are frivolous or fail to state a claim upon which relief could be granted.").

The PLRA also amended the statutory provisions with respect to actions brought by prisoners who are proceeding *in forma pauperis*.  See 28 U.S.C. §1915(e)(2)[3].  Under this provision as well, not only is a court permitted to *sua sponte* dismiss a complaint which fails to state a claim, but it is required to do so by mandatory language.  See, e.g., U.S. ex rel. Banks v. Aramark Correctional Services, Slip Copy, 2008 WL 3833459, at * 2 (W.D.Pa. Aug. 15, 2008) quoting Keener v. Pennsylvania Bd. of Probation and Parole, 128 F.3d 143, 145 n.2 (3d Cir. 1997) (describing 28 U.S.C. § 1915(e)(2)(B) as "the PLRA provision mandating *sua sponte* dismissal of *in forma pauperis* actions that are frivolous or fail to state a claim.").  In performing a court's mandated function of *sua sponte* reviewing a complaint under 28 U.S.C. § 1915(e) and

_____

[3] Title 28 U.S.C. §1915(e)(2) provides:  "Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that--(B) the action or appeal--(i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief."

under § 1915A to determine if it fails to state a claim upon which relief can be granted, a federal district court applies the same standard applied to motions to dismiss under Federal Rule of Civil Procedure 12(b)(6). See, e.g. Tucker v. Angelone, 954 F. Supp. 134, 135 (E.D. Va. 1997) ("Under 28 U.S.C. §§ 1915A, 1915(e) and 42 U.S.C. § 1997e(c) the courts are directed to dismiss any claims made by inmates that 'fail to state a claim upon which relief could be granted'".).

### 5.    Motion for summary judgment pursuant to Rule 56

Plaintiffs and Defendants have attached several exhibits to their respective pleadings. Therefore, this Court will convert the motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) to a motion for summary judgment pursuant to Federal Rule of Civil Procedure 56. See Burns v. Harris County Bail Bond Bd., 139 F.3d 513, 517 (5th Cir.1998). ("When matters outside the pleadings are presented to and not excluded by the district court, the district court must convert a motion to dismiss into a motion for summary judgment."); Greer v. Smith, 2003 WL 1090708, *1 (3d Cir. (Pa.) 2003) ("the District Court considered material outside of the pleadings and, therefore, should have converted the motion for dismissal to a summary judgment motion, allowing the plaintiff an opportunity for appropriate discovery and a reasonable opportunity to present all material made pertinent to the motion.").

Federal Rule of Civil Procedure 56(c) provides that summary judgment shall be granted if the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Rule 56(e) further provides that when a motion for summary judgment is made and supported, "an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if

6

appropriate, shall be entered against the adverse party."  Id.

A district court may grant summary judgment for the defendant when the plaintiff has failed to present any genuine issues of material fact.  See Fed.R.Civ.P. 56(c); Krouse v. American Sterilizer Company, 126 F.3d 494, 500 n.2 (3d Cir. 1997).  The moving party has the initial burden of proving to the district court the absence of evidence supporting the non-moving party's claims.  Celotex Corp. v. Catrett, 477 U.S. 317 (1986); Country Floors, Inc. v. Partnership Composed of Gepner and Ford, 930 F.2d 1056, 1061 (3d Cir. 1990).  Further, "[R]ule 56 enables a party contending that there is no genuine dispute as to a specific, essential fact 'to demand at least one sworn averment of that fact before the lengthy process of litigation continues.'"  Schoch v. First Fidelity Bancorporation, 912 F.2d 654, 657 (3d Cir. 1990) quoting Lujan v. National Wildlife Federation, 497 U.S. 871 (1990).

The burden then shifts to the non-movant to come forward with specific facts showing a genuine issue for trial.  Matsushita Elec. Indus. Company v. Zenith Radio Corp., 475 U.S. 574 (1986); Williams v. Borough of West Chester, Pa., 891 F.2d 458, 460-461 (3d Cir. 1989)(the non-movant must present affirmative evidence - more than a scintilla but less than a preponderance - which supports each element of his claim to defeat a properly presented motion for summary judgment).  The non-moving party must go beyond the pleadings and show specific facts by affidavit or by information contained in the filed documents (i.e., depositions, answers to interrogatories and admissions) to meet his burden of proving elements essential to his claim. Celotex, 477 U.S. at 322; Country Floors, 930 F.2d at 1061.

A material fact is a fact whose resolution will affect the outcome of the case under applicable law.  Anderson v. Liberty Lobby, Inc. 477 U.S. 242, 248 (1986).  Although the court must resolve any doubts as to the existence of genuine issues of fact against the party moving for summary judgment, Rule 56 "does not allow a party resisting the motion to rely merely upon bare assertions, conclusory allegation or suspicions." Firemen's Ins. Company of Newark, N.J. v. DuFresne, 676 F.2d 965, 969 (3d Cir. 1982).  Summary judgment is only precluded if the

dispute about a material fact is "genuine," i.e., if the evidence is such that a reasonable jury could return a verdict for the non-moving party.  Anderson, 477 U.S. at 247-249.

### C.    The *Bivens* and Statutory Claims

#### 1.    The Prison Litigation Reform Act

##### a)    The Exhaustion Requirement

The Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(a), provides:

> no action shall be brought with respect to prison conditions under section 1983 of this title ... by a prisoner confined in any jail, prisons, or other correctional facility until such administrative remedies as are available are exhausted.

Id.

The requirement that an inmate exhaust administrative remedies applies to all inmate suits regarding prison life, including those that involve general circumstances as well as particular episodes.  Porter v. Nussle, 534 U.S. 516 (2002); Cutter v. Wilkinson, 544 U.S. 709, 723 n.12 (2005) (noting that the PLRA requires that "a prisoner may not sue under RLUIPA without first exhausting all available administrative remedies.").  See also Concepcion v. Morton, 306 F.3d 1347 (3d Cir. 2002) (for history of exhaustion requirement).  Administrative exhaustion must be completed prior to the filing of an action.  McCarthy v. Madigan, 503 U.S. 140, 144 (1992).  Federal courts are barred from hearing a claim if a plaintiff has failed to exhaust all the available remedies.[4]  The exhaustion requirement is not a technicality, rather it is federal law which federal district courts are required to follow.  Nyhuis v. Reno, 204 F.3d 65, 73 (3d Cir. 2000) (by using language "no action shall be brought," Congress has "clearly required

_____

[4]  Importantly, a plaintiff's failure to exhaust his administrative remedies does not deprive the district court of subject matter jurisdiction.  Nyhuis v. Reno, 204 F.3d 65, 69 n.4 (3d Cir. 2000) ("...[W]e agree with the clear majority of courts that § 1997e(a) is *not* a jurisdictional requirement, such that failure to comply with the section would deprive federal courts of subject matter jurisdiction.").

exhaustion"). There is no "futility" exception to the administrative exhaustion requirement. Ahmed v. Dragovich, 297 F.3d 201, 206 (3d Cir. 2002) citing Nyhuis, 204 F.3d at 78.

A plaintiff need not affirmatively plead exhaustion. Jones v. Bock, 549 U.S. 199, ___, 127 S.Ct. 910, 921 (Jan. 22, 2007) ("...failure to exhaust is an affirmative defense under the PLRA, and that inmates are not required to specially plead or demonstrate exhaustion in their complaints."); Ray v. Kertes, 285 F.3d 287 (3d Cir. 2002) (holding that "no provision of the PLRA requires pleading exhaustion with particularity," while construing the PLRA requirements in light of the Supreme Court decision in Swierkiewicz v. Sorema, N.A., 534 U.S. 506 (2002)). Instead, it is the burden of a defendant asserting the defense to plead and prove it. Jones, 549 U.S. at ___, 127 S.Ct. at 921.

The PLRA also requires "proper exhaustion," meaning that a prisoner must complete the administrative review process in accordance with the applicable procedural rules, including deadlines. Woodford v. Ngo, 548 U.S. 81, 87-91 (2006) ("Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules ..."). Importantly, the exhaustion requirement may not be satisfied "by filing an untimely or otherwise procedurally defective ... appeal." Id. at 83. See also Spruill v. Gillis, 372 F.3d 218, 228-229 (3d Cir. 2004) (utilizing a procedural default analysis to reach the same conclusion) (" Based on our earlier discussion of the PLRA's legislative history, [...] Congress seems to have had three interrelated objectives relevant to our inquiry here: (1) to return control of the inmate grievance process to prison administrators; (2) to encourage development of an administrative record, and perhaps settlements, within the inmate grievance process; and (3) to reduce the burden on the federal courts by erecting barriers to frivolous prisoner lawsuits.").

### b) The Administrative Process Available to Federal Inmates

So then, no analysis of exhaustion may be made absent an understanding of the administrative process available to federal inmates. "Compliance with prison grievance

procedures, therefore, is all that is required by the PLRA to 'properly exhaust.' The level of detail necessary in a grievance to comply with the grievance procedures will vary from system to system and claim to claim, but it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion." <u>Jones</u>, 549 U.S. at ___, 127 S.Ct. at 922-23.

The Bureau of Prisons has established a multi-tier system whereby a federal prisoner may seek formal review of any aspect of his imprisonment. 28 C.F.R. §§ 542.10-542.19 (1997). First, "an inmate shall ... present an issue of concern informally to staff, and staff shall attempt to informally resolve the issue before an inmate submits a Request for Administrative Remedy." 28 C.F.R. § 542.13(a). Second, if an inmate at an institution is unable to informally resolve his complaint, he may file "a formal written Administrative Remedy Request [to the Warden], on the appropriate form (BP-9), [within] 20 calendar days following the date on which the basis for the Request occurred." 28 C.F.R. § 542.14(a). The warden has twenty (20) days in which to respond. 28 C.F.R. § 542.18. An inmate who is not satisfied with the warden's response may submit an appeal, on the appropriate form (BP-10), to the appropriate Regional Director within twenty (20) calendar days from the date the warden signed the response. 28 C.F.R. § 542.15(a). An inmate who is not satisfied with the Regional Director's response may submit an appeal, on the appropriate form (BP-11), to the General Counsel within thirty (30) calendar days from the date the Regional Director signed the response. <u>Id</u>. The Regional Director has thirty (30) days and the General Counsel has forty (40) days to respond. 28 C.F.R. § 542.18.

### c)        Analysis

Defendants argue that only Plaintiff Ellis has exhausted his administrative remedies as to the issue of the ceremonial feast and that the *Bivens* and statutory claims of all other Plaintiffs should be dismissed under the PLRA. Defendants have provided evidence that Plaintiffs Holland, Rogers, Hamid, Clifford, and Singh have not filed any administrative remedy request as to this issue. Document # 125-2, Declaration of Paralegal Specialist Rosalind Bingham,

Northeast Regional Office of the Federal Bureau of Prisons, ¶7 (Plaintiff Holland),¶9 (Plaintiff Rogers),¶11 (Plaintiff Hamid), ¶13 (Plaintiff Clifford), and ¶15 (Plaintiff Singh).

Plaintiffs have not provided evidence to the contrary and, indeed, have not filed any opposition to the pending motion for summary judgment. In the face of a supported motion for summary judgment, Plaintiffs must do so in order to save their case.[5] See Fed.R.Civ.P. 56(e) (providing that when a motion for summary judgment is made and supported, "an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.").

Accordingly, the motion for summary judgment should be granted in this regard and the *Bivens*, RLUIPA and RFRA claims of Plaintiffs Holland, Rogers, Hamid, Clifford and Singh

---

[5]   In their complaints, Plaintiffs allege that Plaintiff Ellis exhausted administrative remedies for the other Plaintiffs by acting "on behalf of the members of the Sunni community" at FCI McKean (Document # 15, Original Complaint, ¶ 3.1; Document # 99, Amended Complaint, ¶ 3.1; and Document # 141-2, Proposed Second Amended Complaint, ¶ 3.1). In support of this allegation, Plaintiffs cite Bureau of Prisons' Program Statement 1330.13, Section Six which indicates "the president of a *recognized inmate organization* may submit a request on behalf of that organization regarding an issue that specifically affects that organization." Document # 99, ¶ 3.1 (emphasis added).

However, in support of the pending motion, Defendants refute this allegation. The terms "recognized" and "inmate organization" are addressed in Program Statement 5381.05. Document # 125-17, Declaration of Executive Assistant Monica Recktenwald, Exhibit 3, ¶ 2; Document # 125-19, Program Statement 5381.05 (establishing basic procedures concerning the establishment, regulation and operation of inmate organizations and providing a uniform system whereby all organizations will operate within a similar framework of administrative and financial management.). Although the Bureau of Prisons permits "inmate organizations for recreational, social, civic and benevolent purposes," religious groups are not included. Moreover, the Program Statement explains that to be a "recognized"organization, the inmate organization must request prior approval from the Warden. Id.   The record evidence demonstrates that there were no "recognized inmate organizations" at FCI McKean during the relevant time frame. Document # 125-17, Recktenwald Declaration, Exhibit 3, ¶ 4. Therefore, Plaintiff Ellis could not have exhausted administrative remedies on behalf of the other Sunni Muslims.

should be dismissed from this action in accordance with the requirements of the PLRA.

### 2. Plaintiff Ellis' *Bivens* Claims

#### a) First Amendment - Free Exercise of Religion Claim

Next, Defendants argue that the free exercise claim under the First Amendment should be dismissed because the denial of Halal lamb passes constitutional muster under the reasonableness test of Turner v. Safley, 482 U.S. 78 (1987).[6]

Despite their incarceration, prisoners have a First Amendment right to practice their religion. Bell v. Wolfish, 441 U.S. 520, 544 (1979). However, these constitutional rights are limited by the fact of incarceration as well as valid penological objectives. See O'Lone v. Shabazz, 482 U.S. 342, 348 (1987) (free exercise rights are "necessarily limited by the fact of incarceration, and may be curtailed in order to achieve legitimate correctional goals or maintain prison security"); Price v. Johnston, 334 U.S. 266, 285 (1948) ("Lawful incarceration brings about the necessary withdrawal or limitation of many privileges and rights, a retraction justified by the considerations underlying our penal system.").

The evaluation of penological objectives in this context is "committed to the considered judgment of prison administrators," and to ensure appropriate deference to those judgments, courts review challenged prison regulations under a "reasonableness" test. O'Lone, 82 U.S. at 349 quoting Bell, 441 U.S. at 562; Turner, 482 U.S. at 87-91. Courts generally accord great deference to prison officials' adoption and execution of policies, regulations, and practices relating to the preservation of internal order, discipline, and security within the prison

---

[6] To the extent that Plaintiffs allege any *Bivens* claims against the United States, such claims should be dismissed based upon sovereign immunity. See F.D.I.C. v. Meyer, 510 U.S. 471, 477-78 (1994); Johnstone v. United States, 980 F.Supp. 148, 151 (E.D. Pa. 1997) (explaining that *Bivens* actions "may only be maintained against federal officers; sovereign immunity bars such actions against the United States or agencies thereof.").

environment.  Thornburgh v. Abbott, 490 U.S. 401, 407-08 (1989); Turner, 482 U.S. at 85.

The *Turner v. Safley* reasonableness analysis[7] focuses on four factors:

> 1) whether there is a legitimate rational connection between the prison regulation and the governmental interest;
>
> 2) whether the prisoners have alternative means of exercising the constitutional right at hand;
>
> 3) the impact that accommodation of the constitutional right would have on other prisoners, guards, and prison resources in general; and
>
> 4) the availability of alternatives to the regulation.

482 U.S. at 89-90.  "Although the factors are intended to serve as guides to a single reasonableness standard, 'the first factor looms especially large' because it 'tends to encompass the remaining factors, and some of its criteria are apparently necessary conditions.'"  Waterman v. Farmer, 183 F.3d 208, 213-14 (3d Cir. 1999) quoting Amatel v. Reno, 156 F.3d 192, 196 (D.C. Cir. 1998).

### The First Turner Factor

The first *Turner* factor considers the relationship between the policy and the penological interest.  "A prison regulation fails this prong if it promotes an interest that is illegitimate or not neutral, or ... bears no valid, rational connection to the asserted interest."  Fraise v. Terhune, 283 F.3d 506, 516 (3d Cir. 2002).  Under this prong, the court must "accord great deference to the

---

[7] The *Turner* analysis "... assumes as a predicate that the plaintiff inmate has demonstrated that a constitutionally protected interest is at stake."  DeHart v. Horn, 227 F.3d 47, 51 (3d Cir. 2000).  "The mere assertion of a religious belief [by a prisoner] does not automatically trigger First Amendment protections ... [O]nly those beliefs which are both sincerely held and religious in nature are entitled to constitutional protection."  Id.  See also Africa v. Pennsylvania, 662 F.2d 1025, 1029-30 (3d Cir. 1981) cert. denied, 456 U.S. 908 (1982) ("A court's task is to decide whether the beliefs avowed are (1) sincerely held, and (2) religious in nature...").  Because Defendants do not argue that Plaintiff Ellis' beliefs are not sincerely held and/or religious in nature, this Court must determine whether the challenged action is reasonable under *Turner*.

judgments of prison officials 'charged with the formidable task of running a prison.'" Sutton v. Rasheed, 2003 WL 1354099, at * 11 (3d Cir. 2003) quoting O'Lone, 482 U.S. at 353.  This factor requires a two-fold analysis: "we must determine whether the governmental objective underlying the regulations at issue is legitimate and neutral, and that the regulations are rationally related to that objective."  Id. quoting Thornburgh, 490 U.S. at 414-15.  "The first factor is 'foremost in the sense that a rational connection is a threshold requirement - if the connection is arbitrary or irrational, the regulation fails, irrespective of whether the other factors tilt in its favor.  But, ... we do not view it as subsuming the rest of the inquiry."  Id. quoting Wolf v. Reno, 297 F.3d 305, 310 (3d Cir. 2002).

    Here, Defendants claim budgetary concerns as the penological interest.  In support of their motion for summary judgment, Defendants have provided evidence[8] that the budget for the Religious Services Department at FCI-McKean was cut by 15% for the fiscal year 2005 and that the Chaplaincy Services recommended not serving traditional/ritual foods as a way to conserve financial resources.  Document # 125-10, Declaration of Chief Chaplain Jan Olowin, D.Min., Exhibit 2, ¶ 6.  Budgetary constraints are a valid penological interest and restricting religious and ceremonial meals is rationally related to that interest.  Williams v. Morton, 343 F.3d 212, 217-18 (3d Cir. 2003).  See also Fraise, 283 F.3d at 517-18; DeHart, 227 F.3d at 53.[9]  The first Turner factor weighs in favor of Defendants.


                        *The Second Turner Factor*

    The second *Turner* factor "requires a court to assess whether inmates retain alternative

---

    [8]  The *Turner* analysis is extremely fact-intensive.  See Wolf v. Reno, 297 F.3d at 308 (rejecting a "common sense approach" to the *Turner* reasonableness standard).

    [9]  Plaintiff has not filed a brief opposing the motion for summary judgment or produced any evidence to contradict the evidence put forward by Defendants and it is the prisoners' burden to "disprov[e] the validity of the [challenged policy or] regulation."  Williams v. Morton, 343 F.3d at 218.  See also Overton v. Bazzetta, 539 U.S. 126 (2003).

means of exercising the circumscribed right." <u>Fraise</u>, 283 F.3d at 518 <u>quoting</u> <u>Turner</u>, 482 U.S. at 90. However, the analysis focuses specifically on whether the inmate "has alternative means of practicing his [] religion generally, not whether an inmate has alternative means of engaging in the *particular practice* in question." <u>DeHart</u>, 227 F.3d at 55 (emphasis added). When weighing this factor, "we must, of course, focus on the beliefs of the inmate asserting the claim. It is obviously impossible to determine whether a regulation leaves an inmate with alternative ways of practicing the inmate's religion without identifying the religion's practices." <u>Sutton</u>, at *12 <u>quoting</u> <u>Fraise</u>, 283 F.3d at 518. However, this factor "is not intended to require courts to determine whether an inmate's sincerely held religious belief is sufficiently orthodox to deserve recognition." <u>Id.</u> <u>quoting</u> <u>DeHart</u>, 227 F.3d at 255-56 (noting the departure from earlier precedent focusing on "the centrality of religious tenet.").

Here, the government provided the inmates a means to honor the Eid holiday by approving "a day work proscription and an opportunity to pray on that date." Document # 125-10, Olowin Declaration, ¶ 20. Defendants also argue that the inmates could have celebrated the holiday with Halal foods[10] (other than lamb) chosen from the main line, and inmates participating in the religious diet program could have chosen Halal foods from the common fare menu. <u>Id.</u> at ¶18; Document # 125-20, Declaration of Chief Chaplain Edward Roberts, Exhibit 4, ¶ 4; and Document # 125-21, Declaration of Chief Chaplain Ibraham Aziz, Exhibit 5, ¶ 3. Plaintiff has not provided any evidence to the contrary.

This Court finds that regardless of Plaintiff Ellis' preference for lamb, he was still free to exercise his religion despite its absence. <u>See</u> <u>Sutton</u> at *13 <u>quoting</u> <u>Turner</u>, 482 U.S. at 90

---

[10] In a similar case, the Third Circuit explained:

> "A Halal, or lawful, diet includes fruits, vegetables, seafood, and meat from herbivorous animals such as cows and chickens that are properly slaughtered. The opposite of Halal food is Haram food, which is prohibited or unlawful and includes pork and meat from carnivorous animals."

<u>Williams</u>, 343 F.3d at 214.

("where other avenues remain available for the exercise of the inmate's religious faith, courts should be particularly conscious of the measure of judicial deference owed to correction officials."). See also Richardson v. Albino, 2008 WL 4531824 (D.N.J. October 7, 2008). The second *Turner* factor weighs in favor of Defendants.

### The Third Turner Factor

The final two factors "focus on the specific religious practice or expression at issue and the consequences of accommodating the inmate for guards, for other inmates, and for the allocation of prison resources." Sutton at * 15 quoting DeHart, 227 F.3d at 57.

Under *Turner's* third factor, this Court must examine the impact of an accommodation on other inmates, prison staff, and the available resources within the prison, but "should defer to prison officials when the accommodation 'will have a significant ripple effect on fellow inmates or on prison staff ....'" Fraise, 283 F.3d at 520 quoting Turner, 482 U.S. at 90. Accommodating Plaintiff by providing the Halal lamb would have required prison staff to provide specific traditional and ritual foods to each of the other religious groups at FCI McKean (numbering approximately twenty). Document # 125-10, Declaration of Olowin, Exhibit 2, ¶ 2. Such an accommodation would have caused further strain on the already decreased budget. Again, Plaintiff has not provided any evidence to the contrary. The third *Turner* factor weighs in favor of Defendants.

### The Fourth Turner Factor

The fourth *Turner* factor requires this Court to assess whether there are alternatives to the regulation that would impose only "*de minimus* cost to valid penological interests." Turner, 482 U.S. at 91. "The absence of ready alternatives is evidence of the reasonableness of a prison regulation." Id. However, "if an inmate claimant can point to an alternative that fully accommodates the prisoner's rights at *de minimis* cost to valid penological interests, a court may

consider that as evidence that the regulation does not satisfy the reasonable relationship standard." Id. Plaintiff has not identified any alternative to the challenged conduct.

None of the four *Turner v. Safley* factors weighs in favor of Plaintiff. Accordingly, summary judgment should be granted in favor of Defendants on the Free Exercise of Religion claim.

### b) Fifth Amendment - Equal Protection Claim

Next, Plaintiff claims that the denial of the ceremonial feast violates his equal protection rights. The Equal Protection Clause provides that no state shall "deny to any person ... the equal protection of its laws." U.S. Const. Amend. XIV, §1. All persons "similarly situated should be treated alike." City of Cleburne v. Cleburne Living Center, 473 U.S. 432, 439 (1985). "Treatment of dissimilarly situated persons in a dissimilar manner by the government does not violate the Equal Protection Clause." Klinger v. Department of Corrections, 31 F.3d 727, 731 (8th Cir. 1994).

As a threshold matter, in order to establish an equal protection violation, the plaintiff must "...demonstrate that [he has] been treated differently by a state actor than others who are similarly situated simply because [he] belongs to a particular protected class." Keevan v. Smith, 100 F.3d 644, 648 (8th Cir. 1996). Here, Plaintiff's equal protection claim is based solely on vague generalities that he as a Sunni Muslim has been treated unfairly. Plaintiff alleges that Defendants provided kosher items to Jewish inmates for Passover while denying his requests for Halal lamb, thereby violating his equal protection rights. Document # 99, ¶ 4.9. Plaintiff also alleges that "they also purchased and provided special food and items for other faith groups and secular holidays, such as New Years, Easter Sunday, the Fourth of July, and Labor Day, Thanksgiving, and Christmas." Id.

Defendants have provided evidence that prison staff "did not purchase any traditional/ritual foods for ceremonial meals for any religious group during the 2005 fiscal year."

Document # 125-10, Olowin Declaration, ¶¶ 6-8.  Plaintiff has not met the threshold

requirement of showing that he was treated differently from others, and so the motion for

summary judgment should be granted in favor of Defendants in this regard.[11]

### c)        Fifth Amendment - Due Process Claim

Liberally construing the complaint as we must in light of the holding of <u>Haines v.

Kerner</u>, 404 U.S. 519 (1972) and its progeny, it seems that Plaintiff may be generally averring

that his due process rights under the Fifth Amendment have been violated by Defendants.

Plaintiff's allegation in this regard is barely more than a mere mention and Plaintiff does not

articulate whether the due process challenge is procedural or substantive in nature.[12]

The Due Process Clause, guaranteed through the Fourteenth Amendment of the United

States Constitution, provides that no state shall "deprive any person of life, liberty, or property,

without due process of law."  U.S. Const. Amends. V; XIV.  The Due Process Clause was

promulgated to secure the individual from the arbitrary exercise of the powers of government.

The "procedural" aspect of the Due Process Clause requires the government to follow

appropriate procedures to promote fairness in governmental decisions; while the "substantive"

---

[11]  As Plaintiff's *Bivens* claims do not survive the legal analysis, this Court need not
address Defendants' alternative bases for summary judgment (i.e., qualified immunity, improper
service and lack of personal involvement).

This Court notes that Defendants have raised fraud by Plaintiff Ellis as a basis for the
dismissal of this action. Defendants question the authenticity of the signatures of the other
Plaintiffs.  See Document # 125-, pages 35-36.   The allegations of fraud are troubling.  Only an
attorney may sign court filings on behalf of another.  See Fed.R.Civ.P. 11. **Plaintiffs are
hereby warned that none of them may file paper on behalf of another.**  In the event this
issue arises hereafter in this litigation, this Court will consider sanctions against the offending
party.

[12]  Defendants have not moved to dismiss this claim, and so this Court exercises its
authority under the Prison Litigation Reform Act to recommend dismissal as Plaintiff has failed
to state a claim for relief.

aspect of the Clause bars certain government actions regardless of the fairness of the procedures used to implement them so as to prevent governmental power from being used for purposes of oppression. Daniels v. Williams, 474 U.S. 327, 329-33 (1986).

### 1) Substantive due process

The constitutional right to "substantive due process" protects individuals against arbitrary governmental action, regardless of the fairness of the procedures used to implement them. Foucha v. Louisiana, 504 U.S. 71, 80 (1990). See also Collins v. Harker Heights, 503 U.S. 115, 126 (1992) (the Due Process Clause was intended to prevent government officials from abusing power, or employing it as an instrument of oppression); Wolff v. McDonnell, 418 U.S. 539, 558 (1974) ("The touchstone of due process is protection of the individual against arbitrary action of government.").

The Supreme Court has declined to set forth a precise rule that defines the scope of impermissible "arbitrary" conduct for purposes of applying the substantive component of the Due Process Clause. County of Sacramento v. Lewis, 523 U.S. 833, 846 (1998) (clarifying that governmental conduct does not violate a person's substantive due process rights unless it amounts to an abuse of official power that "shocks the conscience."). A substantive due process claim based upon alleged arbitrary and capricious action is not easily mounted, because the relevant level of arbitrariness required in order to find a substantive due process violation involves not merely action that is unreasonable, but rather, something more egregious, which the Third Circuit has termed "conscience shocking." Hunterson v. DiSabato, 308 F.3d 236, 246-47 (3d Cir. 2002). This Circuit has made clear that "only the most egregious conduct will be considered arbitrary in the constitutional sense." Id. at 247-48.

Nothing in the complaint rises to the level of conscience shocking behavior that would support a substantive due process claim. Accordingly, to the extent that Plaintiff is attempting to state a claim of substantive due process, such claims fails to state a claim upon which relief

may be granted and it should be dismissed pursuant to this Court's authority under the Prison Litigation Reform Act.

## 2)    Procedural due process

The procedural aspect of the Due Process Clause guarantees the availability of certain procedural mechanisms, typically the right to notice and a hearing, before the government can deprive an individual of a liberty or property interest.  To establish a procedural due process violation, a person must demonstrate that he has been deprived of a constitutionally-protected property or liberty interest.  Daniels, 474 U.S. at 339.  If a person does not have a constitutionally-protected interest, he is not entitled to the procedural protections afforded by the Due Process Clause.[13]

A constitutionally-protected interest may arise either from the Due Process Clause itself, or from a statute, rule, or regulation.  Hewitt v. Helms, 459 U.S. 460, 466 (1983).[14]  Plaintiff

_____

[13]  If a liberty interest is found, the next step in the due process inquiry is to determine what process is due.  "Due process ... is not a technical conception with a fixed content unrelated to time, place and circumstances."  Gilbert v. Homar, 520 U.S. 924, 930 (1997).  "[D]ue process is flexible and calls for such procedural protections as the particular situation demands."  Morrissey v. Brewer, 408 U.S. 471,  481 (1972).  At a minimum, due process requires notice and the opportunity to be heard.  Paul v. Davis, 424 U.S. 693, 724 (1976) ("Where a person's good name, reputation, honor, or integrity is at stake because of what the government is doing to him, notice and an opportunity to be heard are essential.").

[14]  See Washington v. Glucksberg, 521 U.S. 702 , 720 (1997) ("The [Due Process] Clause [...] provides heightened protection against government interference with certain fundamental rights and liberty interests. [In] a long line of cases, we have held that, in addition to the specific freedoms protected by the Bill of Rights, the liberty specially protected by the Due Process Clause includes the rights to marry, Loving v. Virginia, 388 U.S. 1 (1967); to have children, Skinner v. Oklahoma ex rel. Williamson, 316 U.S. 535 (1942); to direct the education and upbringing of one's children, Meyer v. Nebraska, 262 U.S. 390 (1923); Pierce v. Society of Sisters, 268 U.S. 510 (1925); to marital privacy, Griswold v. Connecticut, 381 U.S. 479 (1965); to use contraception, ibid.; Eisenstadt v. Baird, 405 U.S. 438 (1972); to bodily integrity, Rochin v. California, 342 U.S. 165 (1952), and to abortion, [Planned Parenthood of Southeastern Pennsylvania v.] Casey, [505 U.S. 833 (1992)].").

does not have either a property or liberty interest in receiving a ceremonial feast.  See Russell v. Wilkinson, 79 Fed.Appx. 175 (6th Cir. 2003) (holding that the denial of kosher meals did not involve a property or liberty interest for purposes of due process analysis).  Plaintiff cannot support a claim based upon a violation of his procedural due process rights and this claim should be dismissed for failure to state a claim upon which relief may be granted in accordance with this Court's authority under the Prison Litigation Reform Act.

### 3. Plaintiff Ellis' Statutory Claims

#### a) RLUIPA

Under the Religious Land Use and Institutionalized Persons Act, "government" is defined as "a State, county, municipality, or other governmental entity created under the authority of a state," and "any branch, department, agency, instrumentality or official, thereof, and "ay other person acting under color of State law."  42 U.S.C. 2000c5(4).  Federal courts have held that RLUIPA does not apply to federal prisons.  Pineda-Morales v. DeRosa, 2005 WL 1607276, at *4 (E.D. N.J. 2005). See also Navajo Nation v. U.S. Forest Service, 535 F.3d 1058 (9th Cir. 2008).

Accordingly, Plaintiff Ellis' claims under the RLUIPA should be dismissed.

#### b) RFRA

Under the Religious Freedom Restoration Act, 42 U.S.C. § 2000bb, the "government shall not substantially burden a person's exercise of religion even if the burden results from a rule of general applicability."  42 U.S.C. § 2000bb-1(a).[15]  In order to establish a *prima facia*

---

[15]  In City of Boerne v. Flores, 521 U.S. 507 (1997), the Supreme Court held that the RFRA is unconstitutional as to state and local governments; however, Flores has not been interpreted to preclude RFRA claims against the federal government.  See generally, Gonzales v. O Centro Espirita Beneficente Uniao do Vegetal, 546 U.S. 418 (2006).

case, a plaintiff must show that his "exercise of religion" was "substantially burdened." 42 U.S.C. 2000bb-1(a).[16] Once a plaintiff establishes a *prima facia* case under the RFRA, the burden shifts to the government to demonstrate that "application of the burden" to the plaintiff "is in furtherance of a compelling governmental interest" and "is the least restrictive means of furthering that compelling governmental interest." 42 U.S.C. § 2000bb-1(b)(1-2).

Here, Plaintiff only alleges that "the unlawful conduct by Defendants has imposed a substantial burden on Plaintiffs' religious exercise, inter alia, and caused loss of their religious meal." Document # 99, ¶ 4.15. The denial of a single ceremonial meal is not a substantial burden on the exercise of one's religion. Pratt v. Corrections Corp. of America, 267 Fed.Appx. 482, 483 (8th Cir. March 7, 2008) (RFRA claim fails "because he did not show that defendants placed a 'substantial burden' on his ability to practice his religion by failing to provide him with Halal meat."). See also Patel v. U.S. Bureau of Prisons, 515 F.3d 807, 810-12 and n. 8 (8th Cir. 2008) (prison's meal plan regulations did not substantially burden Muslim inmate's free exercise rights where inmate had access to only vegetarian entrees, and some of those entrees he had to pay for himself); Abdul-Malik v. Goord, 1997 WL 83402, at *5-7 (S.D.N.Y. 1997) (holding that the failure to provide Muslim inmates with Halal meat several times per week did not substantially burden their exercise of religion under RFRA).

Plaintiff's RFRA claim should be dismissed.

---

[16] Although the RFRA does not define the term "substantial burden," the Third Circuit has held within the context of the analogous RLUIPA that a "substantial burden exists where 1) a follower is forced to choose between following the precepts of his religion and forfeiting benefits otherwise generally available to other inmates versus abandoning one of the precepts of his religion in order to receive a benefit; or ) 2 the government puts substantial pressure on an adherent to substantially modify his behavior and to violate his beliefs." Norwood v. Strada, 249 Fed. Appx. 269, 2007 WL 2848036, at *1 (3d Cir. 2007) quoting Washington v. Klem, 497 F.3d 272, 280 (3d Cir. 2007).

**D.      The Federal Tort Claims of all Six Plaintiffs** [17]

Next, Defendants move to dismiss the FTCA claims against the United States.


**1)      Proper Party**

Generally, under the principle of sovereign immunity, the United States cannot be sued for damages unless it consents to being sued.  United States v. Mitchell, 445 U.S. 535, 538 (1980).  The terms of the government's consent define the court's jurisdiction over the case.[18] Lehman v. Nakshian, 453 U.S. 156, 160 (1981). "A waiver of the Federal Government's sovereign immunity must be unequivocally expressed in statutory text and will not be implied." Lane v. Pena, 518 U.S. 187, 192 (1996).

All actions brought pursuant to the FTCA must be brought against the United States of America and not in the name of the allegedly negligent agency, entity or employee.  28 U.S.C. §§ 2671-2680; 28 U.S.C. § 1346(b).   The only proper party in an FTCA action is the United States of America.  To the extent that Plaintiffs allege an FTCA claim against individual Defendants (see Document # 99, Count VII, ¶ 11.1), this claim should be dismissed.

---

[17]   The FTCA contains an exhaustion requirement which mandates an initial presentation of the claim to the appropriate federal agency and a final denial by the agency as a non-waivable prerequisite to the filing of the lawsuit.  28 U.S.C. § 2675(a).  See also Williams v. United States, 1995 WL 769497 (E.D.Pa. 1995) citing Bradley v. United States, 856 F.2d 575 (3d Cir. 1988), vacated on other grounds, 490 U.S. 1002 (1989).  The PLRA exhaustion requirement and the FTCA exhaustion requirement are separate and distinct; "the two administrative exhaustion schemes are simply not interchangeable."  Gaughan v. U.S. Bureau of Prisons, 2003 WL 23139359, at * 1 (N.D.Ill. 2003).  See also  Hylton v. Federal Bureau of Prisons, 2002 WL 720605, at *2 (E.D.N.Y. 2002) (it is possible to exhaust administrative remedies for purposes of the FTCA without exhausting remedies pursuant to the PLRA for purposes of filing a *Bivens* claim); Brockett v. Parks, 48 Fed. Appx. 539, 541 (6th Cir. 2002). Compare Watts v. U.S. 2002 WL 31427395, at *1 (C.A.D.C. 2002) (conversely noting in dicta that exhaustion of prison administrative remedies through the inmate grievance process would not satisfy FTCA exhaustion requirements).  Plaintiffs allege that all six of them individually exhausted their administrative remedies in regard to the tort claim.

[18]  The consent contained in the FTCA is limited. 28 U.S.C. § 2680(a)-(n); United States v. S.A. Empresa de Viacao Aerea Rio Grandense (Varig Airlines), 467 U.S. 797, 808 (1984).

**2)      Torts**

The Federal Tort Claims Act grants jurisdiction to the federal courts to hear suits against the United States Government for torts committed by its employees while in the scope of their employment.  See 28 U.S.C. § 2675(a).  The FTCA sets forth the government's consent to be sued for the negligent conduct of its employees "in the same manner and to the same extent as a private individual under like circumstances." Howell v. United States, 932 F.2d 915, 917 (11th Cir.1991) (citations omitted). The FTCA allows federal inmates to sue the United States for injuries sustained while incarcerated.  28 U.S.C. § 2674.

The FTCA does not create a substantive cause of action against the United States, but provides a mechanism by which a plaintiff may bring a state law tort action against the federal government in federal court.  Hence, in a FTCA action, the district court applies the law of the state in which the act occurred. See 28 U.S.C. § 1346(b); Castillo v. U.S., 2002 WL 1752235, at *3 (7th Cir.2002).  The United States may only be held liable under the FTCA if a private person would be liable under the tort law of the state where the conduct at issue occurred.  See 28 U.S.C. § 1346(b)(1); Williams, 242 F.3d at 175.  The FTCA's limited waiver of sovereign immunity extends no further than the limits of private tort liability under state law, and a claim based on federal constitutional law may not be involved under the FTCA.  Washington v. Drug Enforcement Administrative, 183 F.3d 868, 873 (8th Cir. 1999).

Plaintiffs have not alleged any sufficiently tortious conduct in the complaint.  Instead, Plaintiffs only allege that the United States should be liable under the FTCA for "the intentional gross negligence, unlawful and malicious deprivation of Plaintiffs' religious feast and dietary regulation, for the sole purpose of discriminating against Plaintiffs and to impose a substantial burden on Plaintiffs' religious exercise."  Document # 99, ¶ 5.1.  An alleged constitutional (or RFRA) violation cannot serve as the basis for an FTCA claim unless the conduct is actionable under state tort law.  Because Plaintiffs have failed to allege any tortious act actionable under

state tort law, they have failed to state a claim.   The FTCA claim should be dismissed.


**E.     Plaintiffs' Motion to File a Second Amended Complaint**

Plaintiffs have filed a "Motion for Leave to File an Amended Combine [sic] Federal Tort Claims Act/Civil Rights Complaint."  Document # 141.   In their motion, Plaintiffs acknowledge that the proposed amended complaint differs only slightly from the first amended complaint, specifically in that it seeks to add Edwards Roberts, Northeast Regional Religious Service Administrator, as a Defendant to this action.  Id.

Federal Rule of Civil Procedure 15(a) states that "leave [to amend] shall be freely given when justice so requires."  Id.  "In the absence of any apparent or declared reason--such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.--the leave sought should, as the rules require, be freely given."  Foman v. Davis, 371 U.S. 178, 182 (1962) (interpreting Federal Rules of Civil Procedure).  An amendment would be futile when the complaint, as amended, would fail to state a claim upon which relief could be granted.  In re NAHC, Inc. Securities Litigation, 306 F.3d 1314, 1332 (3d Cir. 2002).

Naming Roberts as a Defendant to this action will not overcome any of the legal defects of the underlying complaint.   Therefore, the motion to amend the complaint [Document # 141] should be dismissed as futile.


**III.     CONCLUSION**

For the foregoing reasons, it is respectfully recommended that that Defendants' motion to dismiss or in the alternative for summary judgment [Document # 124] be granted.

It is further recommended that to the extent that Plaintiffs have attempted to bring either a procedural or substantive due process claim, it should be dismissed for failure to state a claim pursuant to the authority granted to this Court under the Prison Litigation Reform Act.

The Clerk of Courts should be directed to close this case.

In accordance with the Magistrate Judges Act, 28 U.S.C. § 636(b)(1)(B) and (C), and Local Rule 72.1.4 B, the parties are allowed ten (10) days from the date of service to file written objections to this report.  Failure to timely file objections may constitute a waiver of appellate rights.  See Nara v. Frank, 488 F.3d 187 (3d Cir. 2007).

S/ Susan Paradise Baxter
SUSAN PARADISE BAXTER
Chief United States Magistrate Judge

Dated: November 18, 2008